UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| In re: | Case No. C25-1317-KKE |
| JULIE L. JEFFERSON, | Bankruptcy No. 25-10188-CMA |
| Debtor(s). | ORDER ON BANKRUPTCY APPEAL |
| GUY JEFFERSON, | |
| Defendant(s)/Appellant(s), | |
| v. | |
| JULIE L. JEFFERSON, | |
| Plaintiff(s)/Appellee(s). | |

Guy Jefferson ("Appellant") appeals from the bankruptcy court's order denying Julie L. Jefferson's ("Appellee") motion to strip judgment lien, and finding that a divorce decree did not create a lien in his favor on a homestead property. The bankruptcy court, without considering exceptions to the homestead exemption under Wash. Rev. Code § 6.13.080 or the doctrine of partition by owelty, determined that, as a threshold issue, Appellant was required to record the divorce decree to create a lien on the property under Wash. Rev. Code § 6.13.090. For the reasons below, the Court reverses the bankruptcy court's order and remands to the bankruptcy court for further proceedings consistent with this Order.

ORDER ON BANKRUPTCY APPEAL - 1

## I.    BACKGROUND

"Chapter 13 of the Bankruptcy Code affords individuals receiving regular income an opportunity to obtain some relief from their debts while retaining their property.  To proceed under Chapter 13, a debtor must propose a plan to use future income to repay a portion (or in the rare case all) of his debts over the next three to five years." *Bullard v. Blue Hills Bank*, 575 U.S. 496, 498 (2015).  "If the bankruptcy court confirms the plan and the debtor successfully carries it out, he receives a discharge of his debts according to the plan." *Id.*

On January 24, 2025, Appellee Julie L. Jefferson voluntarily filed for Chapter 13 bankruptcy, and listed her ex-husband, Appellant Guy Jefferson as a Schedule D creditor who has "Claims Secured by Property."  Dkt. No. 24 at 4–55, *id.* at 26 (listing Guy Juansales Jefferson as secured creditor, and listing "1620 Harley Ln SW Port Orchard, WA" as the "property that secures the claim").  Appellant's creditor status stemmed from a Kitsap County Court order pertaining to the parties' marriage dissolution. *Id.* at 106–109.  In her amended bankruptcy schedule, Appellee designated a value of $1,025,000.00 to the home located at 1620 Harley Lane ("Homestead Property") and a value of $450,000 to the home located at 1649 Harley Lane ("1649 Property"). *Id.* at 287–88.  In Schedule C of her Chapter 13 filing, Appellee claimed a $539,500.00 exemption on the property at 1620 Harley Lane (the "Homestead Property") pursuant to Washington State's homestead act. *Id.* at 23 (citing Wash. Rev. Code §§ 6.13.010, 6.13.020, 6.13.030).

### A.    The Divorce Order

On April 26, 2024, Kitsap County Court entered an "amended final divorce order (dissolution decree)" ("Divorce Decree") in the matter of Appellant's and Appellee's divorce. *See* Dkt. No. 24 at 106–09.  The Divorce Decree contained two sections summarizing the court's "Money Judgment" and "Real Property Judgment." *See id.* at 107–08.  The Divorce Decree

ORDER ON BANKRUPTCY APPEAL - 2

granted a money judgment to Appellant in the amount of $378,209 to accrue interest at a rate of 6% per year, as well as a transfer of real property from Appellant to Appellee as follows:

1) 1620 Harley Lane, Port Orchard, WA
2) 1649 Harley Lane, Port Orchard, WA (the "1649 Property")
3) Two parcels of "Undeveloped Land"

*Id.* at 107.  The Divorce Decree also granted the transfer of certain real property from Appellee to Appellant at 908 W. Concord, Marion, IL and at 1441 SE Shelton Lane in Port Orchard, WA.  *Id.* As to real property, the Divorce Decree explained that

> The parties own several pieces of real property.  …  [Appellee] is being awarded a majority of the real property and the [Appellant] is being awarded his community interest in the property based on the [money] judgment[.]

*Id.* at 108.  The Divorce Decree further provided that, as to the money judgment:

> [Appellee] must pay [Appellant] $378,209.00.  The court grants a judgment for this amount. … [Appellee] shall pay [Appellant] $378,209 as a transfer payment bearing 6% interest per annum payable over 6 years in equal installments. Payments will be on the 20th of each month beginning on July 20, 2024.  The payment will be secured by a note and deed of trust on the Harley Lane home."

*Id.* at 107.  Finally, the court ordered that no transfer of personal property—i.e., "possessions, assets, or business interests of any kind" was warranted.  *Id.* at 108.

**B.      The Appealed Bankruptcy Order**

On March 28, 2025, Appellee filed a "motion to strip [the] judgment lien" created by the Divorce Decree under 11 U.S.C. §§ 522(f)(1) and 506(a)(1), requesting the bankruptcy court enter "an order valuing the judgment lien of Appellant at $149,991.00 and requiring Appellant release his judgment lien against [her] real property."  Dkt. No. 24 at 69–73.  Appellee asserted that "after taking into account senior liens on the properties and the homestead exemption," there was "insufficient equity" to secure the money judgment awarded by the Divorce Decree.  *Id.* at 71. Specifically, she stated there was no equity in the Homestead Property and $149,991.00 in the 1649 Property.  *Id.*  As such, Appellee asked the bankruptcy court to "enter an order valuing the

ORDER ON BANKRUPTCY APPEAL - 3

Judgment Lien at $149,991.00 with a further Order stating that this lien is to be deemed released and satisfied upon completion of the plan payments." *Id.*

On May 7, 2025, the bankruptcy court held oral argument on the motion to strip the judgment lien. *See id.* at 219–47. Citing Wash. Rev. Code § 6.13.090, the bankruptcy court orally held that the Kitsap County judgment "never became a lien" on the Homestead Property because Appellant failed to record the judgment. *Id.* at 234–36. Appellant subsequently filed a motion for reconsideration, which the bankruptcy court swiftly denied, clarifying that it "did not determine that an unrecorded owelty lien exists." *Id.* at 254.

On July 2, 2025, the bankruptcy court memorialized its oral ruling in an order which stated:

> This matter came before the Court on the Debtor's Motion to Strip Judgment Lien (the "Motion") [ECF No. 22]. The Court held a hearing on the Motion on July 2, 2025, at which it made findings of fact and conclusions of law incorporated by this reference, including without limitation that entry of the AMENDED Final Divorce Order (Dissolution Decree) by the Kitsap County Superior Court on April 26, 2024, did not create a lien in favor of Guy Juanseles Jefferson on the Debtor's real property at 1620 Harley Ln SW Port Orchard, WA[]. Now, therefore, it is hereby, ORDERED that the Motion is DENIED.

*Id.* at 314.

On July 8, 2025, Appellant filed his appeal.

C.    **Washington State's Homestead Act**

In Washington state, the right to a protected homestead derives from the state's constitution: "The legislature shall protect by law from forced sale a certain portion of the homestead and other property of all heads of families." Wash. Const. art. 19, § 1. Responding to its constitutional mandate, the Washington legislature passed the homestead act, which exempts from "attachment and from execution or forced sale," an individual's homestead property, except as provided by the statute. Wash. Rev. Code § 6.13.070. Such protection is "automatic[]" and the homestead exemption is presumed to be valid. *Id.* §§ 6.13.040, .070. The homestead exemption

amount "is the greater of": (1) $125,000; (2) the "county median sale price of a single-family home in the preceding year"; or (3) "no dollar limit" where the homestead is subject to "execution, attachment, or seizure" "to satisfy a judgment in favor of any state for failure to pay that state's income tax[.]" *Id.* § 6.13.030(1).

The Washington legislature also carved out instances where the homestead exemption is unavailable. Relevant here,

> The homestead exemption is not available against an execution or forced sale in satisfaction of judgments obtained:
>
> (1) On debts secured by mechanic's, laborer's, construction, maritime, automobile repair, material supplier's, or vendor's liens arising out of and against the particular property claimed as a homestead[.]

*Id.* § 6.13.080(1).

In 1984, the Washington legislature added a new section to the homestead act, providing that a lien against the value of a homestead in excess of the homestead exemption "commences" only when the judgment granting such lien is recorded. Wash. Laws of 1984, ch. 260 § 16. The current version of the recording requirement provides:

> A judgment against the owner of a homestead shall become a lien on the value of the homestead property in excess of the homestead exemption from the time the judgment creditor records the judgment with the recording officer of the county where the property is located.

Wash. Rev. Code § 6.13.090.

## II.    ANALYSIS

**A.    The Court has Jurisdiction Over the Bankruptcy Court's Order.**

As explained in its prior order, "[t]he district courts of the United States shall have jurisdiction to hear appeals" "from final judgments, orders, and decrees" of the bankruptcy courts. 28 U.S.C. § 158(a).

ORDER ON BANKRUPTCY APPEAL - 5

1.  The Court has jurisdiction to hear an appeal taken from a § 522(f) order.

Appellee re-raises jurisdictional arguments the Court has already considered and rejected in its prior order. Dkt. No. 23 at 8–11, 17; *see* Dkt. No. 22. Despite Appellee's contention that Appellant should have appealed from the confirmation of the bankruptcy plan (*id.* at 17), caselaw—including a case Appellee relies on, *see id.* at 19 (citing *In re Wils*on, 90 F.3d 347 (9th Cir. 1996))—supports that a district court properly assumes jurisdiction over appeals from a bankruptcy court's § 522(f) order. *See, e.g.*, *In re Garcia*, 451 B.R. 909 (C.D. Cal. 2011), *aff'd*, 709 F.3d 861 (9th Cir. 2013).

2.  The appeal was timely filed.

Federal Rule of Bankruptcy Procedure 8002(a) provides that, in general, "a notice of appeal must be filed … within 14 days after the judgment, order, or decree to be appealed is entered." Fed. R. Bankr. P. 8002(a)(1). "A judgment, order, or decree is entered for purposes of [8002(a)] … when it is entered in the docket under Rule 5003(a)." Fed. R. Bankr. P. 8002(a)(5). Rule 5003(a), in turn, provides that the bankruptcy clerk "must" "enter on the docket each judgment, order, and activity," and "show the date of entry for each judgment or order." Fed. R. Bankr. P. 5003(a). Still, under Rule 8002(b), when a party files a motion "to alter or amend the judgment under Rule 9023," "the time to file an appeal runs for all parties from the entry of the order disposing of the last such remaining motion." Fed. R. Bankr. P. 8002(b)(1)(B). Under Rule 9023, a court may alter or amend a judgment on its own, or upon a motion, "within 14 days after the judgment *is entered*." Fed. R. Bankr. P. 9023 (emphasis added).

The bankruptcy court orally ruled on Appellee's § 522(f) motion on May 7, 2025. Dkt. No. 24 at 218–47. Before the bankruptcy court entered its order on the motion, Appellant filed a motion for reconsideration of the court's oral ruling, which the bankruptcy court denied on May 15, 2025. *Id.* at 248–54. In its order denying reconsideration, the bankruptcy court indicated it

had not yet entered its final order on the § 522(f) motion. *Id.* at 253 n. 1 (observing that Appellee had not yet presented a proposed order to the court). Appellee subsequently filed a proposed order on the §522(f) motion, to which Appellant noted objections (*id.* at 255–58). After considering those submissions and holding an additional hearing, the bankruptcy court entered a final order on the § 522(f) motion on July 2, 2025. *Id.* at 313–14. That order stated, "Entered on Docket July 2, 2025." *Id.* at 313. Appellant filed a notice of appeal on July 8, 2025, expressly identifying the bankruptcy court's July 2, 2025 order as the subject of his appeal. *Id.* at 317.

Appellee argues that under Rule 8002(b), the deadline to appeal was triggered by the bankruptcy court's May 15, 2025 order denying Appellant's motion for reconsideration rather than its final order on the § 522(f) motion. Dkt. No. 23 at 12 (citing *United States v. Belgarde*, 300 F.3d 1177, 1180 (9th Cir. 2002)). Appellee's challenge to the timeliness of this appeal fails for three reasons.

First, Appellee's lone citation to *Belgarde* is unpersuasive, as *Belgarde*—which involved a criminal appeal—neither arose in the context of bankruptcy, nor did it implicate the unusual procedural posture at issue.[1] 300 F.3d at 1180. Second, Appellee's argument undermines Rule 8002(b)'s purpose, which is to "toll[] the time for filing a notice of appeal," not constrict such time. *See* Fed. R. Bankr. P. 8002 advisory committee's note to 2014 amendment; *see also In re Edelman*, 237 B.R. 146, 150 (B.A.P. 9th Cir. 1999) ("pursuant to Rule 8002(b), the time within which to file a notice of appeal is tolled"). Third, Appellee's construction would require Appellant to take an appeal from a non-final ruling. Here, the bankruptcy court's order on reconsideration reflected it would first consider Appellee's proposed order on the matter and Appellant's

---

[1] Here, because the bankruptcy court had not yet entered its order on the § 522(f) motion, Appellant's motion for reconsideration on May 7, 2025 appears to have been prematurely filed, undermining Appellee's position. *See* Fed. R. Bankr. 9023 (a motion to alter or amend a judgment "must be filed within 14 days after the judgment is entered.").

objections before issuing its final order. *See* Dkt. No. 24 at 253 n.1. Indeed, Appellee acknowledges that "[o]n July 2, 2025, the bankruptcy court held a hearing to resolve a dispute over the language that had been included in [the] proposed order," before entering a final order. Dkt. No. 23 at 16.

At bottom, Appellee's argument ignores that Appellant elected to take his appeal from the bankruptcy court's final order on the motion to strip, which was not entered on the docket until July 2, 2025. *See* Dkt. No. 24 at 313. Thus, Appellant's notice of appeal—which was filed on July 8, 2025—was timely under Rule 8002(a).

In sum, the appeal was timely, and the Court has jurisdiction over the appeal of the final bankruptcy order under 28 U.S.C. § 158(a).

**B.    The Court Exercises Its Discretion Not to Dismiss the Appeal for Appellant's Failure to Timely File an Appendix.**

Appellee also raises Appellant's failure to file an appendix with his brief as a ground for dismissal. Dkt. No. 23 at 17–19. Under the Federal Rule of Bankruptcy Procedure 8018, "appellant must serve and file with its principal brief an appendix containing excerpts from the record," which must include relevant docket entries; the order from which the appeal is taken; any other orders, conclusions, or opinions relevant to the appeal; the notice of appeal; and any relevant transcript. Fed. R. Bankr. P. 8018(b)(1). Yet as Appellee concedes (Dkt. No. 23 at 18–19), the rule is discretionary in that the reviewing court "may" "dispense with the appendix" and "permit an appeal to proceed on the original record." Fed. R. Civ. P. 8018(e). Appellant filed an appendix before the appeal's noting date. Thus, the Court will not dismiss the appeal for Appellant's failure to timely file an appendix, and will instead exercise its discretion to examine the record provided. *See In re McCarthy*, 230 B.R. 414, 417 (B.A.P. 9th Cir. 1999) (exercising discretion not to dismiss

even where appellant failed "to provide the one document that would directly identify the manner in which the bankruptcy court" ruled).

## C.    Legal Standard

The Court reviews the bankruptcy court's findings of fact for clear error but applies de novo review to conclusions of law and mixed questions of law and fact. *In re JTS Corp.*, 617 F.3d 1102, 1109 (9th Cir. 2010).

## D.    The Divorce Decree Created an Owelty Lien.

In denying Appellee's § 522(f) motion, the bankruptcy court held that the Kitsap County Superior Court's entry of the Divorce Decree did not create a lien on the Homestead Property in favor of Appellant. Dkt. No. 24 at 313–14. At the hearing on the motion, the bankruptcy court reasoned that because Appellant failed to record the Divorce Decree under Wash. Rev. Code § 6.13.090, it never became a lien on the Homestead Property. *Id.* at 234. Finding recordation to be the threshold issue, the bankruptcy court declined to consider whether the Divorce Decree created an owelty lien. *Id.* at 233–34.

Appellant argues that the bankruptcy court erred in declining to consider whether the Divorce Decree created an owelty lien. Dkt. No. 12 at 11–14 (collecting cases). Appellee counters[2] that the Divorce Decree did not create an owelty lien, as such equitable liens are "created only when expressly decreed by the divorce court," and "attach[] to a particular piece of real property to assure payment of a debt related to that property." Dkt. No. 23 at 27–32. As detailed below, the Court agrees with Appellant. The Divorce Decree created an owelty lien: a type of vendor's lien that is not subject to the homestead exemption. Because liens on real estate

---

[2] Appellee also argues the Court should affirm the bankruptcy court's ruling because 11 U.S.C. § 1328(a) "expressly carves out equalization awards" as non-dischargeable in Chapter 13 bankruptcy proceedings. The Court declines to decide this issue, as the bankruptcy court never reached it in the first instance.

ORDER ON BANKRUPTCY APPEAL - 9

commence from the entry of judgment, Wash. Rev. Code § 4.56.200, Appellant was not required to record the Divorce Decree.

The Court begins by examining the doctrine of "owelty," which derives from a long line of Washington state common law.  Where property cannot be easily divided equally between parties during dissolution proceedings, courts in Washington have historically relied on a legal device known as "owelty of partition." *Adams v. Rowe*, 236 P.2d 355, 356 (Wash. 1951); *Hartley v. Liberty Park Assocs.*, 774 P.2d 40, 42 (Wash. Ct. App. 1989) (explaining that the trial court's authority to award compensation to equalize distribution of real property derived from the "time-honored doctrine of owelty." (citing *Von Herberg v. Von Herberg*, 106 P.2d 737 (Wash. 1940)).  Through an award of owelty, a "court may adjudge compensation to be made by one party to another an account of the inequality of partition [of real property]." *Id.*

"Owelty" refers to the sum of money "necessary to effectuate an equal division in partition," 59A Am. Jur. 2d Partition § 2, and "may be allowed as a lien on the excessive allotment if payment cannot be made at once." *Hartley*, 774 P.2d at 42.  "An award of owelty will become a lien on the partitioned property[.]" *Id.*  Washington statute provides that a lien of "[j]udgments of the superior court for the county in which the real estate of the judgment debtor is situated" commences "from the time of the filing by the county clerk upon the execution docket[.]"  Wash. Rev. Code § 4.56.200(2).  Because it is a lien on real estate, "[a]n owelty lien commences from the entry of judgment." *In re Marriage of Wintermute*, 855 P.2d 1186, 1189 (Wash. Ct. App. 1993) (applying Wash. Rev. Code § 4.56.200(2)).  In sum, an award of owelty creates a lien which commences when the county clerk files the judgment on the docket.

With these principles in mind, the Court considers whether the Kitsap County Superior Court Divorce Decree created an owelty lien.

ORDER ON BANKRUPTCY APPEAL - 10

The Divorce Decree here achieves exactly what Washington courts have explained owelty is meant to accomplish: it divides real property between the parties, and awards a sum of money to Appellant, who was otherwise left on unequal footing. *See* Dkt. No. 24 at 106–09. Specifically, it awards the Homestead Property and the 1649 Property to Appellee, while awarding a money judgment of $378,209.00 to Appellant as a "as a transfer payment." *Id.* at 108. The Divorce Decree in unequivocal terms states that "[Appellee] is being awarded a majority of the real property and the [Appellant] is being awarded his community interest in the property based on the [money] judgment[.]" *Id.* at 108. Such a "transfer" of money for real property in the context of a divorce decree has been found to give rise to an owelty lien by multiple Washington courts. *See, e.g.*, *Rowe*, 236 P.2d at 356 (describing owelty lien as a "transfer[]" of "what was held in common," and where property division was "unequal in value," such "inequality [was] compensated by the allotment of a sum of money sufficient to equalize the respective divisions."); *Wintermute*, 855 P.2d at 1188–89 ("equalization" via award of home to one spouse and sum of money to the other is a "compensating device tailored by the court" and "derives from the ancient doctrine of owelty"); *Hartley*, 774 P.2d at 43 (same).

Appellee argues that the Divorce Decree lacks the specificity to create an owelty lien because it references multiple pieces of real and personal property. Dkt. No. 23 at 29–32 (citing *Bank of Am., N.A. v. Owens*, 266 P.3d 211 (Wash. 2011)). According to Appellee, Appellant's money judgment of $378,209.00 was meant to serve as "collective compensation for all this property," rather than as an equalizing payment for the transfer of the Homestead Property. *Id.* at 30–31.

ORDER ON BANKRUPTCY APPEAL - 11

Although the parties' CR2A agreement[3] includes multiple personal property assets, the Divorce Decree states that the money judgment is an award tethered to the "real property" listed therein: specifically, the judgment would be secured by the "Harley Lane Home." *See* Dkt. No. 24 at 107. The Divorce Decree also provides specific tax parcels or account numbers for each piece of real property. *See id.* at 106–07. Undermining Appellee's contention, the Divorce Decree in clear terms provides that "[n]o transfer of [personal] property between [Appellant] and [Appellee] is required." *Id.* at 108.

At oral argument, Appellee disputed whether the Divorce Decree's reference to the "Harley Lane Home" was specific enough to attach to the Homestead Property, given that there are two pieces of real property situated on Harley Lane. But the CR2A Agreement defines the non-homestead Harley Lane Property as "Julie's Father house" while the Homestead Property is described with reference to Harley Lane. Dkt. No. 24 at 154 (Homestead Property listed as "1620 Harley Lane"). And in her original Chapter 13 filing, Appellee listed the Homestead Property as "the property that secures [Appellant's] claim" of $378,209.00. *Id.* at 26. As a result, the Court finds the Divorce Decree is sufficiently particularized in designating the Homestead Property as the property subject to the owelty lien.

Appellee also argues that the Divorce Decree's provision that the money judgment "will be secured by a note and deed of trust on the Harley Lane Home," shows that no owelty lien was created. Dkt. No. 23 at 31. But Appellee again fails to cite authority to support this proposition, and she does not explain why such a provision is dispositive. The Washington Supreme Court has explained that to determine whether a court "created an equitable lien" (such as an owelty lien)

---

[3] In May 2023, Appellant and Appellee signed a Court Rule 2A ("CR2A") Settlement Agreement, which delineated the specific terms of their marital dissolution and was incorporated into the Divorce Decree. *See* Dkt. No. 24 at 150–58.

ORDER ON BANKRUPTCY APPEAL - 12

"on a parcel of real estate," courts should "look to the actual language of the judgment, read in its context and entirety." *Owens*, 266 P.3d at 215. "While helpful, the term 'lien' is not required where the court's intent is clear." *Id.* "[T]he court must fasten the debt to real property that is before the court and specifically identified." *Id.* The Divorce Decree in clear terms provides for a transfer of real property, and a money judgment to "award[]" Appellant with "his community interest in the real property." *Id.* And the Divorce Decree "fastened" Appellant's debt to a particular piece of property, the Homestead Property. *See* Dkt. No. 24 at 107 ("The payment will be secured by a note and deed of trust on the Harley Lane home."). Appellee's argument is particularly unpersuasive in the context of a divorce decree issued in Washington state, where courts have long recognized that an equalizing award creates an owelty lien. *See* Tr. of Oral Decision, *In re Stigen*, No. 25-bk-41263-MJH (Bankr. W.D. Wash. Jan. 16, 2026), Dkt. No. 27-1 at 10–13 (holding that under Washington law, a divorce decree awarding an equalizing money judgment to one party and real property to the other created an owelty lien).[4]

In sum, the Court finds that, under Washington law, the Divorce Decree created an owelty lien.

**E.    The Homestead Exemption is Unavailable Against an Owelty Lien, which is in the Nature of a Vendor's Lien.**

The Court turns to whether the Washington homestead exemption is available to defeat an owelty lien.

To begin, the Washington Supreme Court has held that an owelty lien is "an equitable lien in the nature of a vendor's lien." *Rowe*, 236 P.2d at 356–57; *Wintermute*, 855 P.2d at 1189. A

---

[4] On January 16, 2026, the Honorable Mary Jo Heston issued an oral ruling considering the same issue that is presented here. *See In re Stigen*, No. 25-bk-41263, Dkt. No. 53 (Bankr. W.D. Wash. Jan. 16, 2026). The Court cites to the transcript of that oral ruling provided by Appellant as supplemental authority, as the transcript is not yet publicly available on the bankruptcy court's docket. *Id.*, Dkt. No. 56 ("Transcript access will be restricted through 05/18/2026.").

ORDER ON BANKRUPTCY APPEAL - 13

"vendor's lien," also termed "grantor's lien," is "[a] seller's lien on land as security for the purchase price." *Lien*, Black's Law Dictionary (12th ed. 2024). Washington courts, in concluding that owelty liens are in the nature of vendor's liens, have underscored the nature of the parties' relationship. As explained, an award of owelty is granted when real property cannot be divided evenly. Under such a circumstance, the party who receives the disproportionately large share of the property is "considered a purchaser," while the party who relinquishes a portion of their interest and is entitled to owelty is, in effect, a "vendor" of the property. *Rowe*, 236 P.2d at 357.

Since 1895, the Washington legislature has specified that a homestead exemption is unavailable against judgments obtained on debts secured by vendor's liens arising out of the homestead property. Wash. Laws of 1895, ch. LXIV § 5. Today, the homestead exemption remains unavailable against a vendor's lien pursuant to Wash. Rev. Code § 6.13.080(1), which carves out various instances where the homestead exemption does not apply. Interpreting the provision, the Washington Supreme Court has reasoned that the "Legislature intended that it should be the public policy of this state that no one should be permitted to hold a homestead as against the person from whom he had purchased, and to whom he had not paid the purchase money." *Rowe*, 236 P.2d at 357. Thus, the court continued, "[a]n owelty lien, being in the nature of a vendor's lien, must, under the [homestead] statute, prevail over a declaration of homestead." *Id.*

Appellee argues that because Wash. Rev. Code § 6.13.080(1) does not expressly mention owelty liens, the Court should find it does not apply here. Dkt. No. 23 at 33–34. Crucially, Appellee fails to grapple with the long line of Washington state precedent finding that an owelty lien is not subject to the homestead exemption under Wash. Rev. Code § 6.13.080(1) because it is akin to a vendor's lien. *See Hartley*, 774 P.2d at 42 ("A judgment for owelty is an equitable lien in the nature of a vendor's lien, which will prevail over a declaration of homestead."); *Adams*, 246

ORDER ON BANKRUPTCY APPEAL - 14

P.2d at 449 ("An owelty lien, being in the nature of a vendor's lien, must, under the statute, prevail over a declaration of homestead."). Appellee provides no authority to support her position, which cannot be reconciled with Washington caselaw.

Accordingly, the Court finds that the homestead exemption is unavailable against the owelty lien.

**F.      Appellant Was Not Required to Record the Divorce Decree to Create a Lien on the Homestead Property.**

Appellee asserts that, as the bankruptcy court held, Appellant needed to record the Divorce Decree to create an enforceable lien on the Homestead Property. Dkt. No. 23 at 23–27. To support this argument, Appellee cites *In re Johnston* for the proposition that "[w]hen homestead property is at issue, section 6.13.090 governs the attachment of judgments, rather than section 4.56.200." 331 F. App'x 459, 461 (9th Cir. 2009). Appellee's position, however, fails because it ignores that the Divorce Decree created an owelty lien. *In re Johnston* is distinguishable from this case because there, the creditor failed to record non-owelty judgments. As a result, there was no mechanism by which those judgments could have attached to the homestead property apart from recording. In contrast, here, for the reasons explained above, the owelty lien created by the Divorce Decree "attache[d] to the [Homestead] property" and was "perfected when the [Divorce Decree] was filed." Tr. of Oral Decision, *In re Stigen*, No. 25-bk-41263-MJH (Jan. 16, 2026), Dkt. No. 27-1 at 14–15; *Matter of Marriage of Reynolds*, 2021 WL 1177366, at *4 (Wash. Ct. App. 2021). Indeed, as a lien upon real estate, "[a]n owelty lien commences *from the entry of judgment*." *Wintermute*, 855 P.2d at 1189 (citing *Hartley*, 774 P.2d at 43 and Wash. Rev. Code § 4.56.200) (emphasis added).

In sum, Appellant was not required to record the divorce decree because it created an owelty lien that attached to the Homestead Property upon entry of judgment.

ORDER ON BANKRUPTCY APPEAL - 15

**G.**     **The Bankruptcy Court Did Not Err in Issuing its Order in the Chapter 13 Proceedings.**

In addition to challenging its substance, Appellant attacks the form of the bankruptcy court's decision.  He argues that the bankruptcy court erred in issuing the order in the Chapter 13 proceedings.  Instead, Appellant posits, the bankruptcy court should have required a separate adversary proceeding, and its failure to do so denied him due process.  Dkt. No. 12 at 16–1.  In support of this argument, Appellant cites part of Federal Rule of Bankruptcy Procedure 7001(b), but, as Appellee notes, omits the rule's exceptions.  *See id.* at 16.

Rule 7001(b) provides that an adversary proceeding includes "a proceeding to determine the validity, priority, or extent of a lien or other interest in property—except a proceeding under Rule 3012 or Rule 4003(d)."  Fed. R. Bankr. 7001(b).  In turn, Rule 4003(d) governs "proceeding[s] under § 522(f) to avoid a lien."  Fed. R. Bankr. 4003(d).  Rather than an adversary proceeding, Rule 4003(d) states that a § 522(f) proceeding "must" be commenced by "filing a motion under Rule 9014" or "serving a Chapter 12 or 13 plan on the affected creditors."  Fed. R. Bankr. P. 4003(d)(1).  Finally, rather than requiring an adversary proceeding, Rule 4003(d) allows creditors to "object to a request under § 522(f) by challenging the validity of the exemption asserted to be impaired by the lien."  *Id.*  Interpreting these rules, the Ninth Circuit has explained that "[a] lien avoidance proceeding under § 522(f) must be initiated by motion in the bankruptcy case as provided by Rule 9014 and not by adversary proceeding."  *In re Ahn*, 804 Fed. Appx. 541, 545 (9th Cir. 2020) (citing Fed. R. Bankr. P. 4003(d)).  Here, the underlying order was issued on a § 522(f) motion to avoid a lien.  As a result, no separate adversary proceeding was required.

Thus, the Court agrees with Appellee that the bankruptcy court did not err when it did not require an adversary proceeding to resolve the § 522(f) motion.

//

ORDER ON BANKRUPTCY APPEAL - 16

### III.   CONCLUSION

The order on the § 522(f) motion is REVERSED, and this case is REMANDED for further proceedings consistent with this Order.

Dated this 1st day of April, 2026.

Kymberly K. Evanson
United States District Judge

ORDER ON BANKRUPTCY APPEAL - 17